IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

ALEXANDER HARRIS,
 Plaintiff,

v.                                                          Civil Action No. 3:11-cv-224-JAG

POWHATAN COUNTY SCHOOL BOARD, POWHATAN COUNTY
 Defendant.

## MEMORANDUM OPINION

In this case, the plaintiff, Alexander Harris, accuses the Powhatan County School Board ("the Board") of racial and age-based discrimination in eliminating his long-time position with Powhatan County Schools. The Board has moved for summary judgment under Federal Rule of Civil Procedure 56(a). In the Amended Complaint, the plaintiff asserts four claims: race discrimination under Title VII of The Civil Rights Act of 1964 (Count I), race discrimination in violation of 42 U.S.C. § 1981 (Count II), race discrimination in violation of 42 U.S.C. § 1983 (Count III), and age discrimination in violation of the Age Discrimination in Employment Act of 1967 (ADEA) (Count IV). Essentially, Harris contends (1) the Board eliminated his position because of his age and race; and (2) the Board breached an agreement to pay him for unused annual leave because of his race. Because the plaintiff fails to raise a reasonable inference that the defendant acted based on the plaintiff's age or race, the court grants defendant's motion for summary judgment on all counts.

## I. STATEMENT OF FACTS

Harris, an African-American over 70 years old, began working for the Board in 1957 as a custodian. By the 2008-2009 school year, Harris had worked his way up to the position of

Director of Maintenance and Custodial Services. He reported to Paul Imig ("Imig"), Assistant Superintendent of Finance & Business Operations.

Like other school employees, Harris' employment contract was limited to one school year at a time. Each fall, the Board asked its employees for notice of their intent to return the following year. In November 2008, Harris signed his "Notice of Intent" form for the 2009/2010 school year and, as instructed, returned it to his supervisor, Imig. Imig, however, did not forward Harris' form to the central office but instead held it and wrote a note on the form stating, "Hold – per discussions w/ Alex re retirement." Prior to returning the "Notice of Intent" form, Harris and Imig had a conversation in which Harris indicated that he did not wish to retire, and Imig told Harris that his position may be eliminated the following year.

Harris' hesitation over his retirement stemmed from concern over receiving payment for accumulated annual leave, to which he felt entitled under an alleged oral agreement outside the terms of his formal, written contract. According to Harris, Dr. E. Lee Land, a previous Superintendent, approached him in the 1970s and asked him to forego summer vacations in order to prepare the schools for the upcoming academic year. In return, Harris claims, Dr. Land promised to pay him for the unused leave upon Harris' retirement. Harris also claims that subsequent Superintendents, including Dr. Margaret Meara, the current Superintendent, agreed to this arrangement. He asserts that the Board approved the agreement, but has no written documentation supporting the agreement.

Conversely, Dr. Meara denies ever entering such an agreement with Harris. Harris also acknowledges that Dr. Maynard Bean, the Superintendent between Dr. Land and Dr. Meara, told Harris that he does not recall addressing such an agreement before the Board. No such discussion or approval appears in the Board's minutes. In fact, the Board has a specific policy

2

(Policy GCBDD) forbidding accumulation of back leave in excess of 48 days. Dr. Land, who allegedly hatched the vacation agreement with Harris, initially proposed and implemented the policy limiting the accumulation of back leave. The Board has not authorized Dr. Meara to award compensation for annual leave in excess of Policy GCBDD.

Additionally, Harris' leave record, which he cites to support his assertions that he was able to accumulate more annual leave than Policy GCBDD allows and that he abstained from taking leave during the summer, does not support his claims. Rather, the records show that Harris accumulated no more than 48 days of annual leave per year, the maximum allowed under Policy GCBDD, and that he did take time off during the summer, in conflict with the terms of the alleged contract.

Despite the apparent lack of an agreement, Harris wanted to collect his accumulated vacation pay. Harris therefore sent Dr. Meara a letter on January 29, 2009, indicating that he was considering retiring, that he wanted an accounting of the amount of annual leave lost over his tenure, and that he anticipated retiring on July 1, 2009. He estimated that his accumulated leave amounted to $19,500.

On February 2, 2009, Imig gave Dr. Meara a memorandum recommending that the Board eliminate Harris' position, at a savings of $100,000. The memo says that Harris had told Imig of his intent to retire in 2009 and that his retirement paperwork was forthcoming. Based on savings during an anticipated budgetary shortfall and the belief that Harris intended to retire, Dr. Meara recommended that the Board eliminate Harris' position. Harris acknowledges that the Board eliminated his position based on their belief that he wanted to retire.

The proposed budget reflected the elimination of Harris' position along with 13 other

3

positions then held by employees of varying races and ages.[1]  The Board adopted the budget[2] and eliminated Harris' position, effectively ending his employment at the end of the fiscal year.

Harris met with Dr. Meara and Rose Studivant, the Assistant Superintendent for Human Resources, on March 16, 2009 to discuss his retirement paperwork, which he had not yet completed.  Though his position had already been eliminated, Dr. Meara wanted Harris to complete the paperwork so that he could receive his Virginia Retirement System benefits in a timely fashion.[3]  During this meeting, Harris reiterated that he wanted to retire but that he also wanted compensation for his unused leave.  When Dr. Meara informed Harris that she lacked the authority to pay him for unused leave beyond School Board Policy GCBDD's limits, Harris became upset and said he would not retire without compensation for the entirety of his unused annual leave.

Throughout the course of the decision-making process, Dr. Meara regularly kept the Board's members abreast of the situation via e-mail.  She told members that Harris' position was not needed and its continued existence was a waste of money.  Additionally, after adopting the budget and effectively eliminating Harris' position, Dr. Meara e-mailed Board members to express that Harris was "bullying and attempting to extort money from the Board because everyone is afraid of what he and his friends will do."  A Board member told Dr. Meara that

---

[1] Harris asserts that these 13 employees either retired or resigned of their own volition.  To support this claim, however, he only offers the Board's list of the eliminated positions, which indicates that the employee last holding the position either "Retired" or "Resigned."  This list includes Harris' position and he is designated as "Retired."  As Harris disputes that he retired voluntarily, he effectively disputes the validity of this list.  Without more, the evidence fails to support Harris' contention that the 13 other employees left voluntarily and that he alone was terminated.

[2] Harris made two attempts to speak to the Board about the elimination of his job, but, for various reasons, never got to address the Board directly.  The plaintiff does not contend that this is evidence of discrimination.

[3] Harris needed to complete the paperwork before April 1, 2009 in order to receive these benefits.

4

Harris' family had threatened to go to the media and garner community sympathy based on his long tenure with the school. Dr. Meara feared the backlash that would result and later clarified that by "friends" she was referring to the National Association of Colored People (NAACP), an organization whose name she claimed Harris often invoked. She never told the Board, however, that she had meant to refer to the NAACP or that she feared that any civil rights group would intervene in the dispute. Based on her fear of adverse publicity and the community's reaction, Dr. Meara approached the Board about reinstating Harris' position, even though the cost extended beyond the budget's finances.

At Dr. Meara's request, Board members weighed in on Harris' reinstatement. One member sent an email saying "[t]his does not surprise me at all to say the least" and requesting Dr. Meara call him. Another member recommended putting Harris' reinstatement to a vote, though he stated that he did not intend to vote in favor of reinstatement. The Board's Chairman stated that he did not like being "held hostage," that he did not want to employ someone at any pay level "that does not produce," and that it was irresponsible to let the matter remain in limbo.

Ultimately, the board did not reinstate Harris. Rather, the Board transferred Harris' remaining duties to Russell Wilson, a Caucasian employee in his 50's. On June 10, 2009, Wilson agreed to perform the duties of Harris' former position, for an additional annual stipend of $10,000. This position was absorbed into Wilson's previous duties, and the Board gave him the new title of Director of Facilities.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the movant establishes that there is no genuine dispute of any material fact and is thereby entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). After an adequate period of

time for discovery, Rule 56(a) mandates a grant of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Fed. R. Civ. P. 56(a). The court resolves all genuine factual disputes and inferences in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (*per curiam*).

Once the movant satisfies its showing for summary judgment, the burden shifts to the non-moving party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–88 (1986). The non-movant may not rest on claims within its pleading, but "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* at 587 (internal quotation marks & emphasis omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."); *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988) ("Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law.").

### III. DISCUSSION

Harris claims that the Board's termination of his employment and refusal to compensate his accumulated annual leave were racially discriminatory, in violation of 42 U.S.C. §§1981 and 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). Additionally, Harris claims that the Board's termination of his employment and refusal to award payment for accumulated annual leave discriminated against him on the basis of his age, in violation of the Age Discrimination in Employment Act (ADEA). 29 U.S.C. § 623.

Harris ultimately fails to put forth sufficient evidence to reasonably raise a question of race or age-based discrimination. Because he is unable to establish that the Board's actions amounted to discrimination, the Board is entitled to summary judgment on all counts. Additionally, Harris is unable to establish the existence of the contract which entitles him to payment in excess of the Board's policy. Further, his claims under §§ 1981 and 1983 are unsuccessful as he does not establish municipal liability for the Board's actions. Since Harris has not produced sufficient evidence to raise a genuine issue of material fact, summary judgment is warranted for the Board.

### A. Harris' Termination

Harris claims that his termination is an act of racial discrimination, in violation of Title VII and 42 U.S.C. §§ 1981 and 1983. This claim is unsuccessful as Harris neither discredits the Board's proffered justification for eliminating his position nor shows that the Board's true reason for the adverse employment action was discriminatory.

Title VII of the Civil Rights Act of 1964 creates a cause of action against employers that "fail or refuse to hire or . . . discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In pretext cases, plaintiffs may state a claim for discriminatory discharge by proceeding under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010); *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 227, 285 (4th Cir. 2004). The *McDonnell Douglas* framework applies to claims under Title VII as well as claims under §§

1981 and 1983.[4]  *Abasiekong v. City of Shelby*, 744 F.2d 1055, 1058 (4th Cir. 1984); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 n.1 (1993); *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989).

The *McDonnell Douglas* burden-shifting framework examines (1) whether the plaintiff has made a prima facie showing of discrimination; (2) whether the employer can articulate a legitimate, nondiscriminatory reason for the adverse action; and (3) whether the plaintiff can rebut the employer's justification as mere pretext for unlawful discrimination.  *McKelvy v. Capital One Servs., LLC*, No. 3:09CV821, 2010 WL 3418228, at *3 (E.D. Va. Aug. 20, 2010), *aff'd*, 431 Fed. Appx. 237 (4th Cir. 2011).  In the absence of direct evidence, a plaintiff may establish a prima facie case of unlawful discrimination by demonstrating that (1) he is a member of a protected class; (2) he was qualified for and satisfactorily performed his job; (3) he suffered an adverse employment action; and (4) he was replaced by an individual outside the protected class or treated differently than similarly situated individuals outside the class.  *Burgess v. Bowen*, No. 10–2081, 2012 WL 517190, at *5 (4th Cir. Feb. 17, 2012).  It is undisputed that Harris is African-American and was terminated from his position.  The evidence is sufficient to establish that he was qualified for and satisfactorily performed his position and that he was effectively replaced by Wilson, who is Caucasian.  This showing is sufficient to establish a prima facie case of racial discrimination and shift the burden of refuting Harris' claim to the Board. The Board offers two legitimate, nondiscriminatory reasons for terminating Harris' position: its belief that Harris wanted to retire, and budgetary constraints.  Harris' claim falls short as he neither exposes the Board's reasoning as pretext nor shows that the true reason for his

---

[4] § 1981 grants all persons within the United States equal rights "to make and enforce contracts." 42 U.S.C. § 1981(a).  § 1983 creates a cause of action against any person who deprives another of his or her constitutional rights under color of law.  42 U.S.C. § 1983.

termination is racial discrimination.

Harris does not even attempt to refute the Board's showing that his position was eliminated for budgetary concerns. Rather, Harris exclusively challenges the Board's claim that its members eliminated his position because they believed Harris wanted to retire. Harris offers no evidence to discredit the Board's belief as pretextual, rendering his challenge unsuccessful.

In an effort to expose the Board's belief as pretext, Harris claims to have told Imig that he did not want to retire. Harris does not claim, however, that he spoke directly with the Board or that the Board was otherwise notified of his desire. Though Harris returned his Notice of Intent form, there is no evidence that it reached the Board or came to its attention prior to the budget's adoption. Conversely, two months after the Notice of Intent forms were due, Harris sent Dr. Meara a letter announcing his intended retirement date. Shortly thereafter, Dr. Meara received a letter from Imig confirming Harris' intent to retire and assuring that his paperwork was forthcoming. Based on these communications, Dr. Meara told the Board of Harris' plans to retire. It is well documented that throughout every step of the decision-making process, the Board believed that Harris intended to retire. Though the Board's belief may have ultimately been mistaken, it is undisputed that the Board's belief was genuine. Indeed, Harris personally acknowledged that the Board eliminated his position because its members believed that he wanted to retire. Because Harris fails to show that the Board's reason is pretext, he cannot survive a motion for summary judgment.

Even if Harris were to raise a question of pretext, the evidence altogether fails to show that the Board considered his race when it eliminated his position. Harris attempts to show racial animus from Dr. Meara's e-mail to the Board stating "everyone is afraid of what he and his friends will do." Though Dr. Meara later clarified that she feared the NAACP would become

involved in the imbroglio, she did not communicate this to the Board.  A conflict with the *Superintendent* is irrelevant because it does not show that *the Board's* action amounts to racial discrimination.

Finally, contrary to Harris' assertion, none of the School Board members' comments on the quality of Harris' work, made after voting to eliminate his and 13 other positions, speak to race.  Rather, these comments support the Board's assertion that his termination was a cost-efficient decision, particularly given its belief that Harris wanted to retire.  Further, after the Board decided to eliminate these positions, they considered reinstating Harris, despite the lack of available funding to pay his salary.  Because Harris has failed to offer sufficient evidence of an unlawful race-based consideration, summary judgment is appropriately granted to the Board.

### B. Vacation Pay

Harris also claims that the Board breached its contract to pay him for unused annual leave due to his race, in violation of Title VII, the ADEA, and 42 U.S.C. §§ 1981 and 1983.  This claim fails because Harris does not establish that the contract ever existed.

To recover for discriminatory breach of contract, it is a basic requirement that the plaintiff identify an impaired contract.  42 U.S.C. § 2000e–2(a) (prohibiting racial discrimination "with respect to . . . compensation, terms, conditions, or privileges of employment"); 29 U.S.C. § 623(a) (prohibiting age-based discrimination "with respect to . . . compensation, terms, conditions, or privileges of employment."); 42 U.S.C. § 1981 (a)-(b) (granting the right to all persons "to make and enforce contracts," including "all benefits, privileges, terms, and conditions of the contractual relationship.").  The contract need not be written, but need only confer a benefit which is "part and parcel" of the employment relationship.  *See Hishon v. King & Spalding*, 467 U.S. 69, 75-76 (1984); *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476

(2006). Nevertheless, the plaintiff must prove the existence of a benefit or condition in order to create a cause of action.

Because Harris cannot establish the existence of the agreement, he cannot hold the Board liable for breaching its terms, regardless of the Board's alleged motive. The only proof of the alleged oral contract is Harris' word. Conversely, Dr. Meara denies entering this agreement, the School Board minutes show no prior approval, and the Superintendent who allegedly made the initial offer instituted the very policy which contradicts its terms. Harris is unable to prove that the unused annual leave agreement exists. In addition, such an agreement would violate the terms of his express agreement with the Board.

In the alternative, Harris asks the court to grant relief under a theory of implied contract based on his performance. It is well settled in Virginia that "[t]he law will not impose an implied contractual relationship upon parties in contravention of an express contract." *Nedrich v. Jones*, 429 S.E.2d 201, 207 (Va. 1993) (citing *Royer v. Bd. of Cnty. Supervisors*, 10 S.E.2d 876, 881 (Va. 1940)). Harris' express contract does not give him the right to accumulate excessive annual leave. In fact, Policy GCBDD sets the terms of annual leave accumulation for all School Board employees, specifying "[e]mployees that earn 24 Annual Leave Days per year can retain a total of 48 days as of September 30." Awarding Harris damages for unusual annual leave clearly violates Policy GCBDD's limitations, foreclosing relief under a theory of an implied contract.

Harris' oral allegations cannot override the abundant evidence disproving the contract's existence. As a result, he cannot recover for the Board's refusal to pay him for unused annual leave, and the Board is entitled to summary judgment on the plaintiff's discriminatory breach of contract claims.

### C. *Municipal Liability for Discrimination under 42 U.S.C. §§ 1981 and 1983*

Harris' claims under 42 U.S.C. §§ 1981 and 1983 also fail because Harris cannot impute municipal liability to the Board. It is well established that §§ 1981 and 1983 do not create a cause of action against a county for its employees' actions under a theory of respondeat superior. *Crowley v. Prince George's Cnty.*, 890 F.2d 683, 685 (4th Cir. 1989); *Ashby v. Isle of Wight Cnty. Sch. Bd.*, 354 F. Supp. 2d 616, 625 (E.D. Va. 2004). Rather, to incur liability, a county must either ratify the unlawful discrimination or have an identifiable policy or custom promoting the discrimination. *See Ashby*, 354 F. Supp. 2d at 626-27; *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 735-36 (1989); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (acknowledging that § 1983 creates a cause of action against an unofficial custom of discrimination); *Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995) ("[T]he § 1983 requirement that plaintiffs show an official policy or custom of discrimination also controls in § 1981 actions against state entities.").

Here, Powhatan County does not incur liability for the Board's actions. Harris claims that the Board acted with deliberate indifference towards him. Even if this were true, it would amount neither to ratification of discrimination nor a custom or policy of promoting discrimination under either statute. Nothing on the record indicates that the Board believed or had reason to believe that its actions were discriminatory. As Harris offers no basis for municipal liability, summary judgment is appropriately granted to the Board for Harris' claims under §§ 1981 and 1983.

### D. *Age Discrimination in Employment Act*

Finally, Harris claims that his termination and non-payment of annual leave were acts of age-based discrimination, in violation of the ADEA. The ADEA establishes a cause of action

12

against an employer for "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's age." 29 U.S.C. § 623(a)(1) (emphasis added).   The ADEA prohibits discrimination against individuals of at least 40 years of age, 29 U.S.C. § 631(a), but does not require that a plaintiff lose his job to an individual younger than 40-years-old in order to invoke its protections.  *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312-13 (1996); *Reed v. Buckeye Fire Equip.*, 241 Fed. Appx. 917, 929 n.6 (4th Cir. 2007).

ADEA claims are analyzed under the *McDonnell Douglas* burden-shifting framework employed in Title VII cases.  *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 513 (4th Cir. 2006).  Like Title VII claims, the burden of proof remains with the plaintiff at all times.  *See id.* at 513-14.  Unlike Title VII claims, however, once the employer offers a legitimate, nondiscriminatory reason for the adverse employment action, the plaintiff must ultimately prove not only that the employer unlawfully discriminated on the basis of age but also that age discrimination was the "but for" cause of the adverse action.  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009); *Marlow v. Chesterfield Cnty. Sch. Bd.*, 749 F. Supp. 2d 417, 427 (E.D. Va. 2010); *see also Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1317 (4th Cir. 1993); *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 239 (4th Cir. 1982).  Thus, once the employer has articulated a legitimate, nondiscriminatory reason for the adverse employment action, the plaintiff carries a higher burden under ADEA claims than under Title VII claims.[5]

---

[5] Contrary to the plaintiff's assertion, a prima facie case of age discrimination and evidence of pretext are, standing alone, not necessarily sufficient to defeat summary judgment.  *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 148 (2000) ("[A]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.").

13

Like Harris' claim of racial discrimination, his claim for age-based discrimination fails because he offers no evidence exposing the Board's reasons as pretext. Additionally, Harris does not demonstrate that age discrimination was the "but for" cause of the Board's actions. Harris attempts to establish his ADEA claims by relying on School Board members' statements that Harris was not performing well and that his position was not needed. Rather than expose the Board's actions as discriminatory, the Board's dissatisfaction with Harris' work supports a conclusion that age was not the *sine qua non* of the Board's action. Harris cannot hope to succeed with an argument that rebuts, rather than bolsters, his claim.

Additionally, Harris' claim would still fail even if the Board did not truly believe that he intended to retire. Because an unlawful age consideration must be the "but for" cause of the adverse action, an employer cannot incur liability if age is only one of multiple sufficient factors behind the discriminatory act. *Gross*, 557 U.S. at 176. Even if the Board truly considered age in terminating Harris, he fails to refute the Board's position that he was also terminated due to budgetary constraints. As Harris cannot ultimately discredit the Board's reasons for his termination, summary judgment is granted for the Board on Harris' ADEA claims.

## IV. CONCLUSION

For the reasons set forth above, the Court shall grant the defendant's motion for summary judgment with respect to all claims. The plaintiff's motion shall be denied.

The Court shall enter an appropriate order.

/s/
John A. Gibney, Jr.
United States District Judge

Date: August 7, 2012
Richmond, VA

14